

FILED

JUL 2 2 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**MARVIN ANTONIO LEE,**

      **Petitioner,**

**v.**              **CRIMINAL NO. 2:12-cr-111**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### *MEMORANDUM OPINION AND ORDER*

  Before the Court is Marvin Antonio Lee's ("Petitioner") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 45.

### I. FACTUAL AND PROCEDURAL HISTORY

  In March 2010, Petitioner came under law enforcement investigation after a confidential source purchased heroin from another individual that Petitioner had supplied. Shortly thereafter, law enforcement arranged another controlled purchase from Petitioner, and he was arrested with a quantity of cocaine on his person. Further investigation of the drug conspiracy revealed that Petitioner was involved in the distribution of heroin and cocaine after receiving it from suppliers who had also previously served federal prison time. The conspiracy ran from Spring 2008 through March 5, 2010, though Petitioner was only involved for a short period of time. ECF No. 34 ("[Petitioner's] involvement in the enterprise was abbreviated [and] the drug quantity reasonably foreseeable to the defendant was less than that of the whole"). In total, Petitioner was attributed with 2.735 kilograms of cocaine and 272.9 grams of heroin. ECF No. 49 at ¶ 11.

  Petitioner was named in a single-count Criminal Information on July 9, 2012. ECF No. 3. On July 19, 2012, the Government filed a Criminal Information and Notice, pursuant to 21

U.S.C. § 851, establishing that Petitioner had previously been convicted for his role in a drug conspiracy in the Eastern District of New York. ECF No. 26. On July 31, 2012, Petitioner waived indictment and pleaded guilty to Count 1, Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846. ECF Nos. 27–30. On November 29, 2012, Petitioner was sentenced to a term of 160 months imprisonment. ECF Nos. 41–43.

Petitioner filed his *pro se* Motion for Compassionate Release on May 26, 2020. ECF No. 45. The Court ordered the appropriate responses on May 28, 2020. ECF No. 46. Petitioner, through counsel, responded to the Court's order on June 26, 2020. ECF Nos. 52–54. The Government responded in opposition to Petitioner's motion on July 10, 2020. ECF No. 60. Petitioner replied to the Government's response on July 17, 2020. ECF No. 61. To date, Petitioner has served approximately 97 months of his sentence. ECF No. 49 at 1 ("[d]etained in federal custody without bond since 7/11/12"). His scheduled release date is January 12, 2024. This matter is ripe for disposition.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.*; *see also Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020) (discussing the

2

reasons "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. §1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. §1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the Bureau of Prisons. Therefore, U.S.S.G. §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary

and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Exhaustion Requirement

This Court has previously held that the exhaustion requirement within § 3582(c)(1)(A) may be waived in the midst of the COVID-19 pandemic. *See supra* Part II.A; *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020).   Further, Petitioner filed his administrative request for compassionate release on May 24, 2020. ECF No. 52-2, ECF No. 57 at 5. Petitioner's request was denied by the Bureau of Prisons on June 22, 2020. ECF No. 60-2. The Government also concedes that Petitioner has satisfied the exhaustion requirement. ECF No. 60 at 15. Therefore, Petitioner has satisfied the exhaustion requirement within § 3582(c)(1)(A).

#### B. Resolution of the Defendant's Request for Compassionate Release

##### 1. Consideration of the Factors Listed in 18 U.S.C. § 3553(a)

In its consideration of the factors listed in 18 U.S.C. § 3553(a), the Court begins with Petitioner's offense conduct and criminal history, which involves a persistent pattern of offenses involving drugs, guns, or both. *See supra* Part I (describing Petitioner's offense conduct); ECF No. 49 at ¶¶ 21–30 (listing adult convictions for Possession of Cocaine with Intent to Distribute,

Possession of Cocaine with Possession of a Firearm, Conspiracy to Possess with Intent to Distribute Heroin, Possession with Intent to Distribute Cocaine, Concealed Weapon, and Possession of a Firearm by Convicted Felon Aid and Abet). Petitioner also served 15 months in state prison for the cocaine he possessed in March 2010 that became the starting point for the instant federal case. *Id.* at ¶ 30. The sum of Petitioner's criminal history resulted in a Career Offender designation at sentencing. *See* 18 U.S.C. § 3553(a)(2)(A)–(C) (implicating the need for a sentence that reflects the seriousness of the offense, respect for the law, specific deterrence, and incapacitation).

An examination of Petitioner's personal history reveals an intelligent individual who is capable of being productive, though his need for drug treatment and an exit from his past lifestyle is also apparent. His drug use began at age 15 and he has abused alcohol, marijuana, cocaine, and prescription drugs, though his drug of choice is heroin. ECF No. 49 at ¶ 53. Petitioner dropped out of high school in the 10th grade, but later earned a GED. *Id.* at ¶ 58. Later, Defendant earned a bachelor's degree while he was incarcerated and completed his MBA around the same time he caught the attention of investigators in the instant case. *Id.* at ¶¶ 61–62. Unfortunately, Petitioner's abilities never translated into any consistent period of legitimate employment before the instant offense. *Id.* at ¶¶ 63–78 (listing a series of odd jobs interrupted by periods of criminal activity and incarceration). Further, Petitioner's educational success has not stopped him from becoming involved with large quantities of drugs.

During his current stint of imprisonment, Petitioner has continued his record of participating in programming, though his disciplinary record provides concern that he has not abandoned his lifestyle of improperly using and selling drugs. ECF No. 55 at 14, 28, 39, 53, and 76 (documenting Petitioner's receipt of pain medication through the "pill line" because of

incidences of his hoarding of the medication and passing off crushed medication to another inmate). While Petitioner may benefit from drug treatment, the drug quantities involved in his offenses, his conduct in BOP custody, and the sum of his record reveal a problem that goes beyond Petitioner's selling of drugs to support his own habit. ECF No. 49 at ¶¶ 11, 28 (attributing Defendant with 2.735 kilograms of cocaine and 272.9 grams of heroin in the instant offense and 5.5 kilograms of heroin and 3 kilograms of cocaine from his conviction in the Eastern District of New York); *see* 18 U.S.C. § 3553(a)(2)(D) (requiring the Court to consider the need for correctional treatment).

   *2. Evaluation of "Extraordinary and Compelling Reason"*

   At the outset of the analysis of whether Petitioner has presented an extraordinary and compelling reason, the Court is advised against grants of compassionate release when the petitioner is a danger to the safety of any person or to the community. U.S.S.G. § 1B1.13(2). By the same token, educational credentials are not sufficient to demonstrate proof that a danger formerly presented by a petitioner has subsided. *See e.g. Dinning v. United States*, 2020 WL 1889361, at *3 (E.D. Va. Apr. 16, 2020) (denying compassionate release because the petitioner "poses an ongoing danger to the community" based on his stated desire to return to the same positions of trust that facilitated his offense). Further, a petitioner's release plan should account for the potential for a subsequent offense once he or she is out of the custody of the Bureau of Prisons. *See Coleman*, 2020 WL 3039123, at *4–*5.

   In his original criminal judgment, Petitioner's was placed on notice that he is not permitted to associate with any person convicted of a felony without permission. ECF No. 42 at 3. Now, Petitioner seeks release to a residence that is currently occupied by a former co-conspirator from his last federal conviction. ECF No. 49 at ¶ 28 (naming Petitioner's former co-

conspirator); ECF No. 52-5 at ¶ 10 (naming the same individual as a resident of the address to which Petitioner requests release). This arrangement is unacceptable, especially because Petitioner became involved in the instant offense after reconnecting with several individuals who he knew from past criminal activity and terms of incarceration. ECF No. 49 at 7, 10 (documenting that Petitioner knew his co-conspirators in this case from serving time at FCI Butner and FCI Petersburg).

Further, the Court is unpersuaded that Petitioner's medical conditions are of sufficient severity to warrant relief. Contrary to his assertions, Petitioner's weight is relatively well controlled and his heart and lungs appear to be well-functioning. ECF No. 55 at 5, 9; *see also id.* at 25 (documenting Petitioner's history of morbid obesity and listing it as resolved). Although Petitioner has a documented history of asthma, it is mild enough to control without medication. Finally, Petitioner's sleep apnea is currently being treated and is not found among the Centers for Disease Control's list of medical conditions that may increase the risk of severe COVID-19 infection. *See United States v. Lewellen*, 2020 WL 2615762, at *4 (N.D. Ill. May 22, 2020). At 48 years old, Petitioner is in relatively good health and the purposes of his original sentence remain unfulfilled. Therefore, the Court finds no extraordinary and compelling reason for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**. The Clerk is **DIRECTED** to send a copy of this Order to Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
July ____, 2020

Raymond A. Jackson
United States District Judge

7